FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ NOV 3 0 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FELICIA N. BOWEN,
Plaintiff,

– against –

MTA NEW YORK CITY TRANSIT AUTHORITY,
Defendant.

MEMORANDUM & ORDER

09-CV-3153



**APPEARANCES:**

For the Plaintiff:  Stewart Lee Karlin
9 Murray Street, Suite 4W
New York, NY

For Defendant:  Joyce R. Ellman
New York City Transit Authority
130 Livingston Street
Brooklyn, NY 11201

**JACK B. WEINSTEIN, Senior United States District Judge:**

I. Introduction ................................................................................................................. 2
II. Facts ........................................................................................................................... 2
III. Procedural History .................................................................................................... 5
IV. Jurisdiction and Election of Remedies ..................................................................... 6
V. Summary Judgment Standard .................................................................................... 7
VI. Statute of Limitations ............................................................................................... 8
   A. Generally ............................................................................................................. 8
   B. Relation Back ...................................................................................................... 9
   C. Continuing Violations ....................................................................................... 10
   D. Application ........................................................................................................ 11
VII. Hostile Work Environment .................................................................................... 12
   A. Law .................................................................................................................... 12
   B. Application ........................................................................................................ 16
VIII. Conclusion ............................................................................................................ 17
IX. Appendix A ............................................................................................................. 18

## I. Introduction

Plaintiff Felicia N. Bowen sues her current employer, the New York City Transit Authority (NYCTA), a division of the Metropolitan Transit Authority, alleging discrimination on the basis of race, sex, and disability in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17 ("Title VII"), and the American Disabilities Act of 1990, 42 U.S.C. §§ 12112-12117 ("ADA"). The complaint alleges: (1) failure to promote; (2) hostile work environment resulting from sexual harassment; (3) failure to accommodate plaintiff's back problem; and (4) retaliation. *See* Compl. ¶¶ 4, 7, Doc. Entry 1, July 15, 2009 ("EDNY Compl."); Pl. Memo of L. in Opp. to Def.'s Mot. for Summ. J. at 9, Doc. Entry 46, Sept. 30, 2011 ("Pl. Memo"). It is unclear whether the plaintiff brings any state or local law claims. Defendant moves for summary judgment.

Plaintiff has stipulated to withdraw all claims but the hostile work environment claim based on sexual harassment. *See* Hr'g on Mot. for Summ. J., Nov. 7, 2011.

Summary judgment is denied with respect to plaintiff's Title VII hostile work environment claim. The record provides at least one instance of harassment that is not barred by the statute of limitations, permitting the court to consider the totality of the record, including other incidents that would otherwise be time-barred. Sufficiently set forth is evidence of a hostile work environment created by a pattern of sexual harassment. To the extent that plaintiff raises similar claims under state or local law, these claims are barred by state law on election of remedies.

## II. Facts

Since January 26, 1998, plaintiff has been employed as a bus driver for the NYCTA. *See* Ellman Decl., Ex. A (Pl. Dep. 427), Doc. Entry 40, Aug. 1, 2011 ("Pl. Dep."); Ellman Decl., Ex. B. (Compl. Intake Form), Doc. Entry 40, Aug. 1, 2011 ("Compl. Intake"). From 2005-2007, she was supervised by Howard Citrinbaum. Def. Ex. M (Citrinbaum Dep. 8:7-9:10), Doc. Entry 50, Oct. 20, 2011.

Plaintiff alleges that she was subject to a pattern of allegedly harassing acts by her supervisor. This conduct occurred over a span of three years.

On several occasions, Mr. Citrinbaum licked his lips while looking at plaintiff and winked at her. Pl. Dep. 106:1-108:25; 198:9-14. During disciplinary meetings, he allegedly looked her up and down, causing her discomfort. *Id.* at 20:7-18; 214:16-216:24.

From 2005-2006, Mr. Citrinbaum also verbally harassed plaintiff. He told her on several occasions that they should "do it." *Id.* 68:6-12; 71:5-16. At one point, he also stated that he could show her a "good time." *Id.* 71:17-72:10.

On two occasions the acts allegedly escalated to unwanted physical contact. On April 8, 2005, plaintiff was wearing a jacket over her standard uniform when she was approached by Mr. Citrinbaum. She describes the incident as follows:

> I walked [past Mr. Citrinbaum], he looked me up and down, took a deep breath and winked. I ignored him as usual. He says, Ms. Bowen, you can't wear that. Thinking he's referring to the hat, I say no problem, and walked away. I stop to talk to a driver going by to [see] if Citrinbaum stops him. He doesn't. When I get to my bus, do my inspection, and let my hair down, I go to drive out the depot, he comes to my bus, freaking licks his disgusting lips, which I've never seen him do before and again Ms. Bowen, I said you can't wear that. I say what the blue jacket? I then tell him I'm cold and I just came back from having a cold. He just winked and said, take it off. It's not what he said, but more of how he said it, like he was trying to take it off with his eyes, like he is really crazy.

3

Ellman Dec. Ex. E (NYSDHR Am. Compl. 13-14), Doc. Entry 40, Aug. 1, 2011 ("Am. Compl.").

After plaintiff did not take off her jacket, Mr. Citrinbaum took plaintiff "out of service." Compl. Intake. In the process of turning off the bus engine, Mr. Citrinbaum allegedly "took his hands and went down [plaintiff's breasts]." Pl. Dep. 42:15-19; 60:3-61:8; 51:21-24. This conduct caused plaintiff to state: "There's something fucking wrong with you." Ellman Decl. Ex. H (Arbitration Findings 2), Doc. Entry 40, Aug. 1, 2011. The incident left plaintiff feeling "numb and helpless." Plaintiff wanted to "run to [her] car and leave, but then he [Mr. Citrinbaum] would have that on [her] too." Am. Compl. 14.

On another occasion, someone felt and "cupped" plaintiff's backside. Pl. Dep. 143:6-15; 148:2-9; 157:17-158:5. Although she did not see who did it, she concluded that it was Mr. Citrinbaum after seeing him walking behind her shortly thereafter.

Plaintiff reported the sexual harassment to superintendent Paul Maresca and to an assistant shop steward on Nov. 29, 2006. Pl.'s Memo 13 (citing Pl.'s Dep. 116:13-25; 120:8 – 122:8). She also complained to coworkers. *Id.*

The last act of harassing conduct claimed occurred on October 27, 2007. Mr. Citrinbaum allegedly followed her to the ladies room. After she left the ladies room, he continued to watch her while she was watching television in the crew room. Because of Mr. Citrinbaum's presence, she turned off the television and walked to the back of the depot. Pl. Dep. 27:2-11. As plaintiff walked to the back of the depot, she walked past Mr. Citrinbaum, but did not exchange any words with him. Pl. Dep. 37:15-25; Pl. Ex. A (Pl. Dep. 6:1-25), Doc. Entry 46, Sept. 23, 2011 ("Pl. Ex. A"). At the time of the incident, the crew room was occupied by a number of employees. Pl. Dep. 22:17-23.

> Plaintiff describes feeling traumatized by her experiences:
>
> [The NYCTA] has caused me severe panic and anxiety attacks as well as great financial burdens. I am always on edge, I can't sleep through the night (very fatigued), and I have become overly emotional. I have also been affected physically, suffering from pains in my stomach, back and abdomen due to stress and frustration.

Am. Compl. 17. At one point, she started to carry a camera around to document the sexual harassment. *Id.* 16. Plaintiff has sought psychological help and attended therapy sessions for work-related stress allegedly as a result of her work environment. *See* Pl. Memo 15 (citing Pl. Ex. A 384: 4-19). She has been prescribed sleeping pills, pain killers and anxiety pills for her stress symptoms. *Id.* (citing Pl. Ex. A 430-432).

### III.  Procedural History

On June 15, 2005, plaintiff filed a complaint with the NYCTA's internal Equal Employment Opportunity (EEO) office, alleging race and sex discrimination. Compl. Intake. On March 3, 2006, the EEO determined there was "no reasonable cause" for the allegations that plaintiff's supervisors had violated the NYCTA's policies.

After receiving this letter, plaintiff went to the Manhattan office of the New York State Department of Human Rights (NYSDHR) complaining of sexual harassment. Bowen Dec. ¶ 3, Doc. Entry 49, Sept. 30, 2011 ("Bowen Dec."). She was informed that she would have to file her complaint with the Brooklyn office. *Id.* On October 16, 2006, plaintiff filed a complaint with the Brooklyn office of the NYSDHR alleging sex and disability discrimination. Ellman Decl. Ex. D. (Verified Compl.), Doc. Entry 40, Aug. 1, 2011. Plaintiff simultaneously filed a complaint with the Equal Employment Opportunity Commission ("EEOC").

At some point, plaintiff met with an investigator and a supervisor at the NYSDHR. At that meeting, she was informed that the agency did not have a record of her sexual harassment claim and was told she could amend her complaint. Bowen Dec. ¶¶ 8-9. On August 15, 2008, plaintiff filed an amended complaint with the NYSDHR and EEOC. The amended complaint reiterated the prior allegations and included new allegations of sexual harassment. *See* Am. Compl.

After an investigation, her NYSDHR complaint was dismissed on the merits on January 5, 2008. Ellman Decl. Ex. F (Determination and Order After Investigation), Doc. Entry 40, Aug. 1, 2011. On April 13, 2009, her EEOC complaint was summarily dismissed. Ellman Decl. Ex. G (Dismissal and Notice of Rights), Doc. Entry 40, Aug. 1, 2011. She was issued a right to sue letter April 24, 2009. EDNY Compl.

Plaintiff filed a pro se complaint in the Eastern District of New York on July 15, 2009. Compl. She subsequently retained counsel.

## IV. Jurisdiction and Election of Remedies

Federal jurisdiction exists to enforce Title VII. *See* 28 U.S.C. § 1331.

State and local law claims must be dismissed for lack of jurisdiction. Where a complainant has filed a discrimination action with the NYSDHR and such action has been litigated on the merits, New York law bars relitigation of the state law claims in federal court or other venue. N.Y. Exec. Law § 297(9) ("Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction...unless such person had filed a complaint...with any local commission on human rights."); *see, e.g., York v. Ass'n of the Bar*, 286 F.3d 122, 127 (2d Cir. 2002); *Benson v. North Shore-Long Island Jewish Health Sys.*, 482 F. Supp. 2d 320, 325-27 (E.D.N.Y. 2007). Once

claims are filed with the NYSDHR, those claims or claims based on the same incidents may not be brought again in another court. *See York*, 286 F.3d at 127.

Plaintiff filed a complaint with the NYSDHR on October 16, 2006 alleging sex and disability discrimination and sexual harassment. *See* Ellman Decl. Ex. D (NYSDHR Compl.); Def. Ex. L (NYSDHR Closing Statement). Because plaintiff elected to participate in the state proceeding, she is barred from bringing a later claim in any court based on the same facts. Plaintiff has not raised any state or local law claims that post-date or that are different than those covered by the NYSDHR decision. All claims under state or local law are dismissed.

## V. Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and if the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Mitchell v. Washingtonville Cent. School Dist.*, 190 F.3d 1, 5 (2d Cir. 1999). In ruling on a motion for summary judgment, the evidence must be construed in the light most favourable to the non-moving party and all reasonable inferences drawn in her favor. Fed. R. Civ. P. 56(c); *see Anderson*, 477 U.S. at 247–50, 255; *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009). This is particularly true where the complaint is filed by a pro se plaintiff. *See Lerman v. Bd. Of Elections*, 232 F.3d 135, 140 (2d Cir. 2000); *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 346 (S.D.N.Y. 2002). Moreover, summary judgment should be used sparingly when, as is often the case in sexual harassment claims, state of mind or intent are at issue. *See Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 61 (2d Cir. 1998) (internal citations and quotations omitted).

The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995);

7

*see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party appears to have met this burden, the opposing party must produce evidence that raises a question of material fact to defeat the motion. *See* Fed. R. Civ. P. 56(e). This evidence may not consist of "mere conclusory allegations, speculation or conjecture." *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *see also Delaware & Hudson Ry. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) ("Conclusory allegations will not suffice to create a genuine issue.").

## VI. Statute of Limitations

### A. Generally

In a state with its own fair employment practices agency (such as the NYSDHR), a federal discrimination claim must be filed with the EEOC within 300 days of the alleged incident in order to be timely. 42 U.S.C. § 2000e-5(e)(1); *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (reading statutory time limitations as mandatory); *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134 (2d Cir. 2003) (same); *Payne v. MTA N.Y.C. Transit*, 349 F. Supp. 2d 619, 624 (E.D.N.Y. 2004) (same). A discrete discriminatory act occurs on the day that it actually happened, *Morgan*, 536 U.S. at 110, and accrues for statute of limitation purposes when the individual knows or should have known of the injury, *see Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir.1999).

In *Morgan*, the Supreme Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."

> Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180– or 300–day time period after the discrete discriminatory act occurred.

536 U.S. at 113. This general rule is subject to two exceptions: the relation back doctrine and the continuing violation doctrine.

8

## B. Relation Back

When a plaintiff files an amended complaint, the timeliness of any new charges depends on whether those allegations "relate back" to the claims in the original complaint. *See* 29 C.F.R. § 1601.12(b) ("A charge may be amended to . . . clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received."). If an amended complaint alleges additional claims or facts, then only those discriminatory acts that occurred within 300 days of the filing of the amended complaint are timely. If the allegations, however, "relate back" to the claims in the original complaint, then any acts which fell within the original, earlier 300 day period are also timely. In deciding whether the claims relate back, a "flexible approach" is necessary, *Silver v. Mohasco Corp.*, 602 F.2d 1083, 1090 (2d Cir. 1979), *rev'd on other grounds*, 447 U.S. 807 (1980), particularly in light of the fact that the initial EEOC charge is often made without the assistance of counsel, *Adames v. Mitsubishi Bank Ltd.*, 751 F. Supp. 1565, 1572 (E.D.N.Y. 1990).

In determining whether an additional claim relates back to the initial complaint, courts have looked at whether the facts alleged in the initial complaint would have supported the new claim. In *Hopkins v. Digital Equipment Corp.*, the plaintiff had filed an initial complaint alleging only race discrimination based on denial of her application for a particular job. 1998 WL 702339, at *2-3 (S.D.N.Y. Oct. 8, 1998). Nothing in her original complaint indicated that she had any basis for a retaliation or disability claim. *Id.* at *2. Plaintiff later filed several amended complaints alleging disability discrimination and retaliation, as well as facts supporting those

9

claims. *Id.* The Southern District of New York found that the new claims did not relate back to the original complaint. *Id.* Similarly, in *Hornsby v. Conoco, Inc.*, the Court of Appeals for the Fifth Circuit held that an amended complaint that alleged a new claim of sexual harassment did not relate back to plaintiffs original claim of age and sex discrimination, since the facts included in the original complaint did not include any harassment allegations. 777 F.2d 243 (5th Cir. 1985). By contrast, in *Adames*, the Eastern District of New York found that "by adding race and color as bases for discrimination, [plaintiff's] amended complaint properly 'amplified' her original complaint alleging only national origin discrimination." 751 F. Supp. at 1572.

### C. Continuing Violations

"Under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Lambert v. Genesee Hospital*, 10 F.3d 46, 53 (2d Cir. 1993), *cert. denied*, 511 U.S. 1052 (1994). Because a hostile work environment is a continuing violation, a claim of hostile work environment is timely so long as one discriminatory act occurred within the statutory period. *See, e.g., Morgan*, 536 U.S. at 120–21 (finding courts must "determine whether the acts about which an employee complaints are part of the same actionable hostile work environment practice, and if so, whether any act falls within statutory time period."). If it did, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Morgan*, 536 U.S. at 117. But "if an act on day 401 had no relation to the acts between days 1-100, or for some other

reason...was no longer part of the same hostile environment claim, then the employee cannot recover for the previous acts, at least not by reference to the day 401 act." *Id.* at 118.

In determining whether the plaintiff has sufficiently alleged a continuing violation, courts consider whether the act within the statutory period is related to the prior discriminatory conduct. In *Morgan*, for example, the Supreme Court held that where the pre- and post-limitations period incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers, pre-limitations conduct could be encompassed in the hostile environment claim. *Id.* at 120–21; *see also Benson*, 482 F. Supp. 2d at 330 (finding that allegations of "a systemic pattern of harassing behavior" over the course of six years was sufficient to allege a continuing violation). By contrast, where a plaintiff's termination occurred within the limitations period, a hostile work environment claim may still be untimely where the plaintiff had "proffered no evidence to show that the termination, even if discriminatory, was in furtherance of the alleged practice of racial harassment." *Patterson v. Cnty of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004); *see also Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570–71 & n. 6 (2d Cir. 2000) (finding sufficient evidence to support the plaintiff's claim of a hostile work environment but emphasizing that the plaintiff's termination—which the court found to be nondiscriminatory—did not constitute support for the claim).

### D. Application

Plaintiff did not allege any charges of sexual harassment until she filed her amended complaint on August 18, 2008. This claim does not relate back to her original complaint. The facts in her original complaint, which alleged four incidents in which she was denied work or pay, do not support a claim of sexual harassment. Plaintiff's own affidavit indicates that

11

NYSDHR was not aware of any claim of sexual harassment until she met with an agency supervisor prior to filing her amended complaint. Bowen Dec. ¶ 3. Because plaintiff's amended complaint was filed on August 18, 2008, any harassing acts that post-date October 20, 2007 are not time-barred.

Since plaintiff alleges a hostile work environment, any acts consistent with a continuing violation may also be considered timely. The October 27, 2007 incident, in which Mr. Citrinbaum supposedly watched plaintiff from outside the women's locker room, is not time barred. The encounter could be found to be part of the same hostile environment alleged throughout plaintiff's complaint. All of the allegedly harassing conduct was instigated by Mr. Citrinbaum, plaintiff's supervisor. The incident on October 27, 2007 was consistent with previous instances in which he leered at the plaintiff, made suggestive comments, or made unwanted physical contact. *Compare Morgan*, 536 U.S. 101 *with, e.g., Alston v. Microsoft Corp.*, 2009 WL 1116360 at *7 (S.D.N.Y. Apr. 27, 2009) (finding lack of continuity between hostility at work and termination of employment barring hostile work claim); *Stouter v. Smithtown Cent. School Dist.*, 687 F. Supp. 2d 224, 230–31 (E.D.N.Y. 2010) (finding time barred claims too remote and isolated to contribute to hostile work environment claim). Plaintiff's hostile work environment claim due to sexual harassment is not time barred.

## VII. Hostile Work Environment

### A. Law

Pervasive sexual harassment may create a hostile work environment claim under Title VII. *See* 42 U.S.C. § 2000e-2(a)(1); *Burlington Indus, Inc. v. Ellerth*, 524 U.S. 742, 751–52 (1998) (noting that, although term "hostile work environment" is not found in statutory text, Title VII has long been held to incorporate such claims); *cf. Harris v. Forklift Sys., Inc.*, 510 U.S. 17,

12

19 (1993) (finding hostile work environment where supervisor frequently insulted plaintiff because of gender, made plaintiff target of unwanted sexual innuendo, and threw objects on the ground, and asked plaintiff and other women to pick the objects up). Plaintiff must show that a hostile work environment existed and that there is a basis for imputing the conduct. *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62 (1998). When the harasser is a supervisor, the employer is assumed to be liable. *See Burlington*, 524 U.S. at 765 ("An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.").

To establish that a hostile work environment existed, plaintiff must "show that the complained of conduct: (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007); *see also Harris*, 510 U.S. at 21; *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). The conduct need not be both severe and pervasive; one or the other may support a finding of a hostile work environment. *Terry v. Ashcroft*, 336 F.3d 128, 147-48 (2d Cir. 2003).

The record as a whole must be examined and the totality of the circumstances assessed in determining whether the work environment was objectively hostile. *See Raniola v. Bratton*, 243 F.3d 610, 617 (2d Cir. 2001). A variety of factors are considered, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Morgan*, 536 U.S. at 116 (internal citations and quotation marks omitted).

Whether a work environment was sufficiently hostile to violate Title VII is a question of fact. *See, e.g., Holtz*, 258 F.3d at 75; *Schwapp v. Town of Avon*, 118 F.3d 106, 112 (2d Cir.1997). Summary judgment is appropriate only if it can "be concluded as a matter of law that no rational juror could view [the defendant's conduct] as . . . an intolerable alteration of [the plaintiff's] working conditions." *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000). As the Court of Appeals for the Second Circuit has acknowledged:

> A federal judge is not in the best position to define the current sexual tenor of American cultures in their many manifestations. Such an effort, even were it successful, would produce questionable legal definitions for the workplace where recognition of employees' dignity might require standards higher than those of the street.

*Gallagher v. Delaney*, 139 F.3d 338, 342-43 (2d Cir. 1996). Thus, a claim of sexual harassment is often best evaluated by "a jury made up of a cross section of our heterogeneous communities." *Id*; *see also Ganzy v. Allen Christian School*, 995 F.Supp. 340, 360-61(E.D.N.Y. 1998) (noting that, given complex history of women's rights, a jury trial provides best mechanism for resolving claims of harassment and hostile work environment).

Isolated incidents are generally insufficient to support a claim of an objectively hostile work environment. *See Faragher v. City of Boca Raton*, 524 U.S. 774, 788 (1998) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." (citation and internal quotation marks omitted)); *see also Alfano*, 294 F.3d at 374 (noting "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive"). In *Vito v. Bausch & Lomb, Inc.*, 403 Fed. Appx. 593, 597 (2d Cir. 2010), plaintiff complained of a single incident in which a supervisor touched plaintiff's shoulder, and that his hand slipped down and touched her breast. The court found that the single instance was not independently

14

severe enough to give rise to a hostile work environment claim. *Id.* at 597. Similarly, in *Lewis v. North Gen. Hosp.*, the court found that the unwanted physical conduct alleged—three incidents in which a female supervisor brushed against the male plaintiff—was not sufficiently severe and may have been merely accidental. 502 F. Supp. 2d 390, 403 (S.D.N.Y. 2007); *see also Redd v. New York State Div. of Parole*, 2010 U.S. Dist. LEXIS 28617 at *3 (E.D.N.Y. Mar. 24, 2010) (holding that there was not an objectively hostile work environment where only conduct alleged was three instances in which a female supervisor brushed against plaintiff's breasts over a five-month period and contact may have been accidental). *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759 (2d Cir. 1998), required dismissal of a hostile work environment claim where supervisors (1) told plaintiff "she had been voted the 'sleekest ass' in the office and (2) that the supervisor had "deliberately touched [plaintiff's] breasts with some papers that he was holding. *Id.* at 768. The appellate court found that "[t]hough the two incidents in question . . . are obviously offensive and inappropriate, they are sufficiently isolated and discrete that a trier of fact could not reasonably conclude that they pervaded Quinn's work environment." *Id.*

By contrast, courts have found that the plaintiff experienced a hostile work environment where "either . . . a single incident was extraordinarily severe, or . . . a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of her working environment." *Cruz v. Coach Stores, Inc*, 202 F.3d 560, 570 (2010) (citations omitted). In *Holtz v. Rockefellar & Co, Inc.*, the Court of Appeals for the Second Circuit overturned a district court's grant of summary judgment for defendant. It found a triable hostile work environment claim where, over a course of several months, plaintiff's supervisor allegedly grabbed and placed his hands on her hand each day and frequently touched her hair. 258 F.3d 62, 75-76 (2001). Plaintiff's supervisor also allegedly obscenely leered at plaintiff and attempted to look

15

underneath her clothing and teased her about her sex life. *Id.* In *Cruz*, the Court of Appeals found that the plaintiff had met her burden by testifying that her supervisor "would make repeated remarks to the effect that women should be barefoot and pregnant" and "would stand very close to women when talking to them and would 'look[ ] at [them] up and down in a way that's very uncomfortable.'" *Id.* at 571.

### B. Application

A reasonable jury could find that plaintiff experience "discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment...." *Harris*, 510 U.S. at 21.

Unlike in *Vito* and *Quinn*, this plaintiff was not subject to a single instance of unwanted physical contact, but to a pattern of conduct that occurred over the course of three years. It included both physical and verbal harassment.

At the hearing on November 7, 2011, defense counsel sought to minimize Mr. Citrinbaum's conduct:

> All of the claims that she's making about winking and licking lips, allegedly brushing against her breast and cupping her backside . . . do not add up, even collectively to . . . a hostile work environment. . . . They may be offensive, but they do not add up to the severe and pervasive work environment that the Courts have held is required as a matter of law . . . . *[S]he basically claimed that . . . he looked her up and down. . . . And she claimed that he licked his lips*, basically, on one occasion. I mean, that is really a neutral act. You know, we all have licked our lips. She's not claiming that he licked it in some lascivious way.

Tr. of Summ. J. Mot. Hr'g 7:5 – 8:20, Nov. 7, 2011 (emphasis added). Lewd gestures and looks may alone be sufficient to create an atmosphere of sexual hostility. *See* Appx. A (Ct. Ex. 1). Here, those remarks and gestures were compounded by offensive touching.

16

It cannot be concluded that no rational juror would find that the plaintiff experienced a hostile work environment. Because all the harassment was committed by plaintiff's supervisor, Mr. Citrinbaum, the NYCTA can be found liable for his conduct. Defendant's motion for summary judgment is denied.

## VIII. Conclusion

Defendant's motion for summary judgment is denied with respect to plaintiff's hostile work environment claim. Plaintiff has stipulated to withdraw all remaining federal claims. Jurisdiction over any state or local claims is absent.

The case is set down for trial on January 9, 2012. Jury selection shall begin on January 3, 2012. On consent, the jury will be chosen by the magistrate judge.

All *in limine* motions shall be heard on December 22, 2011. On or before December 19, 2011, the parties shall provide each other and the court with names of witnesses, summaries of their proposed testimony, marked exhibits, and proposed jury charges.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: November 29, 2011
Brooklyn, New York

17