FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ DEC 3 0 2011 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FELICIA N. BOWEN,
Plaintiff,

– against –

MTA NEW YORK CITY TRANSIT
AUTHORITY,
Defendant.

MEMORANDUM &
ORDER

09-CV-3153



**APPEARANCES:**

For the Plaintiff:  Stewart Lee Karlin
9 Murray Street, Suite 4W
New York, NY

For Defendant:  Joyce R. Ellman
New York City Transit Authority
130 Livingston Street
Brooklyn, NY 11201

**JACK B. WEINSTEIN, Senior United States District Judge:**

I. Introduction ........................................................................................................................ 2
II. Facts .................................................................................................................................... 2
III. Procedural History .............................................................................................................. 5
IV. Jurisdiction and Election of Remedies ............................................................................... 9
V. Summary Judgment Standard ........................................................................................... 10
VI. Statute of Limitations ....................................................................................................... 11
   A. Generally .................................................................................................................... 11
   B. Relation Back ............................................................................................................. 12
   C. Equitable Tolling ........................................................................................................ 15
VII. Conclusion ........................................................................................................................ 18

1

## I.  Introduction

Plaintiff Felicia N. Bowen sues her employer, the New York City Transit Authority (NYCTA), a division of the Metropolitan Transit Authority, alleging discrimination on the basis of race, sex, and disability in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17 ("Title VII"), and the American Disabilities Act of 1990, 42 U.S.C. §§ 12112-12117 ("ADA"). The complaint alleges: (1) failure to promote; (2) hostile work environment resulting from sexual harassment; (3) failure to accommodate plaintiff's back problem; and (4) retaliation. *See* Compl. ¶¶ 4, 7, Doc. Entry 1, July 15, 2009 ("EDNY Compl."); Pl. Mem. of L. in Opp. to Def.'s Mot. for Summ. J. 9, Doc. Entry 46, Sept. 30, 2011 ("Pl. Summ. J. Mem."). It is unclear whether the plaintiff brings any state or local law claims. Defendant moves for summary judgment.

Plaintiff stipulated to withdraw all claims but the hostile work environment claim based on sexual harassment. *See* Hr'g on Mot. for Summ. J., Nov. 7, 2011.

Upon reconsideration, summary judgment is granted with respect to plaintiff's Title VII hostile work environment claim. Since the last incident of harassment occurred more than 300 days prior to filing a charge with the U.S. Equal Employment Opportunity Commission (EEOC), the claim is time barred. To the extent that plaintiff raises similar claims under state or local law, these claims are barred by state law on election of remedies.

## II.  Facts

Since January 26, 1998, plaintiff has been employed as a bus driver for the NYCTA. *See* Ellman Decl. Ex. A (Pl. Dep. 427), Doc. Entry 39, Aug. 1, 2011 ("Pl. Dep."); Ellman Decl. Ex. B (MTA Equal Opportunity Office Compl. Intake Form), Doc. Entry 39, Aug. 1, 2011 ("MTA

2

EEO Compl. Intake"). From 2005-2007, she was supervised by Howard Citrinbaum. Ellman Reply Decl. Ex. M (Citrinbaum Dep. 8:7-9:10), Doc. Entry 50, Oct. 20, 2011.

Plaintiff claims that she was subject to a pattern of allegedly harassing acts by her supervisor. This conduct occurred over a span of three years.

On several occasions, Mr. Citrinbaum licked his lips while looking at plaintiff and winked at her. Pl. Dep. 106:1-108:25; 198:9-14. During disciplinary meetings, he allegedly looked her up and down, causing her discomfort. *Id.* at 20:7-18; 214:16-216:24.

From 2005-2006, Mr. Citrinbaum also verbally harassed plaintiff. He told her on several occasions that they should "do it." *Id.* 68:6-12; 71:5-16. At one point, he also stated that he could show her a "good time." *Id.* 71:17-72:10.

On two occasions the acts allegedly escalated to unwanted physical contact. On April 8, 2005, plaintiff was wearing a jacket over her standard uniform when she was approached by Mr. Citrinbaum. She describes the incident as follows:

> I walked [past Mr. Citrinbaum], he looked me up and down, took a deep breath and winked. I ignored him as usual. He says, Ms. Bowen, you can't wear that. Thinking he's referring to the hat, I say no problem, and walked away. I stop to talk to a driver going by to [see] if Citrinbaum stops him. He doesn't. When I get to my bus, do my inspection, and let my hair down, I go to drive out the depot, he comes to my bus, freaking licks his disgusting lips, which I've never seen him do before and again Ms. Bowen, I said you can't wear that. I say what the blue jacket? I then tell him I'm cold and I just came back from having a cold. He just winked and said, take it off. It's not what he said, but more of how he said it, like he was trying to take it off with his eyes, like he is really crazy.

Ellman Decl. Ex. E (New York State Division of Human Rights Am. Compl. 13-14), Doc. Entry 39, Aug. 1, 2011 ("NYSDHR Am. Compl.").

After plaintiff did not take off her jacket, Mr. Citrinbaum took plaintiff "out of service." MTA EEO Compl. Intake. In the process of turning off the bus engine, Mr. Citrinbaum

3

allegedly "took his hands and went down [plaintiff's breasts]." Pl. Dep. 42:15-19; 60:3-61:8; 51:21-24. This conduct caused plaintiff to state: "There's something fucking wrong with you." Ellman Decl. Ex. H (Arbitration Findings 2), Doc. Entry 39, Aug. 1, 2011. The incident left plaintiff feeling "numb and helpless." Plaintiff wanted to "run to [her] car and leave, but then he [Mr. Citrinbaum] would have that on [her] too." NYSDHR Am. Compl. 14.

On another occasion, someone felt and "cupped" plaintiff's backside. Pl. Dep. 143:6-15; *id.* at 148:2-9; *id.* at 157:17-158:5. Although she did not see who did it, she concluded that it was Mr. Citrinbaum after seeing him walking behind her shortly thereafter.

Plaintiff reported the sexual harassment to superintendent Paul Maresca and to an assistant shop steward on Nov. 29, 2006. Pl.'s Summ. J. Mem. 13 (citing Pl.'s Dep. 116:13-25; *id.* at 120:8 – 122:8). She also complained to coworkers. *Id.*

The last act of harassing conduct claimed occurred on October 27, 2006. Mr. Citrinbaum allegedly followed her to the ladies room. After she left the ladies room, he continued to watch her while she was watching television in the crew room. Because of Mr. Citrinbaum's presence, she turned off the television and walked to the back of the depot. Pl. Dep. 27:2-11. As plaintiff walked to the back of the depot, she walked past Mr. Citrinbaum, but did not exchange any words with him. Pl. Dep. 37:15-25; Pl. Ex. A (Pl. Dep. 6:1-25), Doc. Entry 46, Sept. 23, 2011 ("Pl. Ex. A"). At the time of the incident, the crew room was occupied by a number of employees. Pl. Dep. 22:17-23.

Plaintiff describes feeling traumatized by her experiences:

[The NYCTA] has caused me severe panic and anxiety attacks as well as great financial burdens. I am always on edge, I can't sleep through the night (very fatigued), and I have become overly emotional. I have also been affected physically, suffering from pains in my stomach, back and abdomen due to stress and frustration.

4

NYSDHR Am. Compl. 17. At one point, she started to carry a camera around to document the sexual harassment. *Id.* at 16. Plaintiff has sought psychological help and attended therapy sessions for stress allegedly caused by her work environment. *See* Pl. Summ. J. Mem. 15 (citing Pl. Ex. A 384:4-19). She has been prescribed sleeping pills, pain killers, and anxiety pills for her stress symptoms. *Id.* (citing Pl. Ex. A 430-432).

Were it not for procedural barriers, plaintiff would clearly have a cause of action for the sexual harassment she claims she was subjected to by her supervisor.

### III. Procedural History

On June 15, 2005, plaintiff filed a complaint with the NYCTA's internal Equal Employment Opportunity (EEO) office, alleging race and sex discrimination. MTA EEO Compl. Intake. In that complaint, she described the incident in which Mr. Citrinbaum took her out of service for wearing a jacket over her uniform. *Id.* She did not mention that he had touched her breast, nor did she allege any sexual harassment. *Id.* Instead, she complained that she was disciplined for wearing a non-uniform jacket, while male bus operators were not disciplined for the similar conduct. *Id.* On March 3, 2006, the EEO determined there was "no reasonable cause" for the allegations that plaintiff's supervisors had violated the NYCTA's policies. Ellman Decl. Ex. C (MTA EEO Findings Mem.), Doc. Entry 39, Aug. 1, 2011

After receiving notice of the EEO's findings, plaintiff went to the Manhattan office of the New York State Department of Human Rights ("NYSDHR") to file a discrimination complaint. Bowen Decl. ¶ 3, Doc. Entry 49, Sept. 30, 2011 ("Bowen Decl."). She contends that she complained of sexual harassment at that office. *Id.* She was allegedly told she would have to go to the Brooklyn office of the NYSDHR to file a claim for sexual harassment. *Id.*

5

Plaintiff filed an initial complaint with the NYSDHR on October 16, 2006. Pl.'s Summ. J. Mem. 8. The complaint alleged sex and disability discrimination stemming from four instances in which she was denied work or pay. Ellman Decl. Ex. D (NYSDHR Compl.), Doc. Entry 39, Aug. 1, 2011. It did not include a claim of sexual harassment, nor did it include any allegations of inappropriate looks, remarks, or touches. *Id.* Plaintiff simultaneously filed the complaint with the EEOC. *Id.*

Plaintiff testified in court at a hearing on the issue of summary judgment that, on the same day she filed her complaint, she went to the Brooklyn offices of the NYSDHR to file a sexual harassment complaint. Tr. of Hr'g on Mot. for Reconsideration, Dec. 28, 2011. There, she says she was informed that she could only file a complaint with the assistance of an investigator, and since there were only two investigators on staff at the Brooklyn NYSDHR at the time, and their caseloads were full, she would have to wait to be contacted in order to complete an intake report. *Id.*

Plaintiff swore at the court hearing that she went back the next week to try to file her sexual harassment claim. *Id.* She was again told by a secretary that she could not file a complaint. *Id.* She went a third time the following week, and then again two weeks after that. *Id.* She claims that she went to the Brooklyn NYSDHR more than ten times to try to file her sexual harassment complaint, and called more than twenty times. *Id.* She told the court that she eventually complained to her congresswoman about the delay. *Id.*

Admitted into evidence at the hearing was the official NYSDHR event history for the plaintiff's claim (a kind of extended docket sheet). Pl.'s Ex. 1, Hr'g on Mot. for Reconsideration, Dec. 28, 2011. This record lists in considerable detail the actions taken in relation to that agency's investigation of her claim and contacts between the plaintiff and the

6

agency. Also admitted was the full record of all documents in the NYSDHR file on plaintiff's complaint. Def.'s Ex. B., Hr'g on Mot. for Reconsideration, Dec. 28, 2011. These documents portray a different picture of events than what the plaintiff described at the court hearing.

After she filed her complaint with the NYSDHR, plaintiff's next documented contact with that agency was on December 12, 2006. Pl.'s Ex. 1, Hr'g on Mot. for Reconsideration, Dec. 28, 2011. She called to request an extension of time to rebut the respondent's response to her complaint. *Id.* She was given until December 29, 2006. *Id.* She called again on December 28, 2006 to request a further extension to January 2, 2007, which was also granted. *Id.* There is no mention in the record that she complained of sexual harassment or that she wished to amend her complaint to include this contention.

After timely filing her rebuttal, plaintiff submitted a letter with additional evidence supporting her initial complaint to the NYSDHR on January 31, 2007. Def.'s Ex. B, Hr'g on Mot. for Reconsideration, Dec. 28, 2011. The letter does not allege any sexual harassment.

On February 2, 2007, the agency called plaintiff regarding information in the record indicating that she might want to file a separate claim of retaliation. *Id.* According to the event history:

> Upon her information, [the alleged discrimination is] just ongoing behaviors that continue since before she filed the instant complaint – so no retaliation under the NYSHRL. Informed her that the information provided will be entered in the file and considered as part of evidence in re sex and disability discrimination. She said fine.

*Id.* Nothing in the entry indicates that plaintiff notified the agency of a sexual harassment claim.

In the next several months, plaintiff called the agency twice—on December 10, 2007 and January 10, 2008—to complain about how long it was taking to investigate her NYSDHR

7

complaint. *Id.* She also visited the office on April 23, 2008, raising the same issue. *Id.* There is no record that she attempted to complain of sexual harassment.

According to agency records, plaintiff first complained of sexual harassment during a telephone interview on August 14, 2008. *Id.* This is the earliest mention of claimed sexual harassment in the NYSDHR's official event history. No prior mention of harassment is present in plaintiff's full NYSDHR file.

Plaintiff claims that the NYSDHR event history is an incomplete record of her contacts with the agency. Tr. of Hr'g on Mot. for Reconsideration, Dec. 28, 2011. She testified that it does not document all of her contacts with the agency because the staff only started documenting her contacts when she asked them to, several months after she began calling. *Id.*

As reflected in both the NYSDHR event history and her testimony, in August 2008, plaintiff met with an investigator at the NYSDHR. At that meeting, she was informed that the agency did not have a record of her sexual harassment claim and was told she could amend her complaint. Pl.'s Ex. 1, Hr'g on Mot. for Reconsideration, Dec. 28, 2011; *see also* Bowen Decl. ¶¶ 8-9. According to the agency's records, when asked why she did not initially include an allegation of sexual harassment, plaintiff replied, "I figured that all the other things were enough so I left out the sexual harassment." Pl.'s Ex. 1, Hr'g on Mot. for Reconsideration, Dec. 28, 2011. Plaintiff agreed that she made that statement, but testified that she was referring to her complaint with the MTA's internal EEO. Tr. of Hr'g on Mot. for Reconsideration, Dec. 28, 2011.

On August 15, 2008, plaintiff filed an amended complaint with the NYSDHR and EEOC. The amended complaint reiterated the prior allegations and included a new claim of sexual harassment. *See* NYSDHR Am. Compl. ¶¶ 13-14, Doc. Entry 39, Aug. 1, 2011. Attached to this

8

new complaint was a twelve page affidavit by the plaintiff. This affidavit detailed many additional incidents that were not mentioned in the original complaint, including occasions on which plaintiff's supervisor looked at her lasciviously; touched her breast; and made sexual remarks. *Id.*

Following an investigation, her amended NYSDHR complaint was dismissed on the merits on January 5, 2008. Ellman Decl. Ex. F (NYSDHR Determination and Order After Investigation), Doc. Entry 39, Aug. 1, 2011. On April 13, 2009, her amended EEOC complaint was summarily dismissed. Ellman Decl. Ex. G (EEOC Dismissal and Notice of Rights), Doc. Entry 39, Aug. 1, 2011. She was issued a right to sue letter April 24, 2009. EDNY Compl.

Plaintiff filed a pro se complaint in the Eastern District of New York on July 15, 2009. EDNY Compl. She subsequently retained counsel.

## IV. Jurisdiction and Election of Remedies

Federal jurisdiction exists to enforce Title VII. *See* 28 U.S.C. § 1331.

State and local law claims must be dismissed for lack of jurisdiction. Where a complainant has filed a discrimination action with the NYSDHR, and such action has been litigated on the merits, New York law bars relitigation of the state law claims in federal court or any other venue. N.Y. Exec. Law § 297(9) ("Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction . . . unless such person had filed a complaint . . . with any local commission on human rights."); *see, e.g., York v. Ass'n of the Bar*, 286 F.3d 122, 127 (2d Cir. 2002); *Benson v. North Shore-Long Island Jewish Health Sys.*, 482 F. Supp. 2d 320, 325-27 (E.D.N.Y. 2007). Once claims are filed with the NYSDHR, those claims or claims based on the same incidents may not be brought again in any court. *See York*, 286 F.3d at 127.

Plaintiff filed a complaint with the NYSDHR on October 16, 2006, alleging sex and disability discrimination and sexual harassment. *See* Ellman Decl. Ex. D (NYSDHR Compl.); Def. Ex. L (NYSDHR Closing Statement). Because plaintiff elected to participate in the state administrative proceeding, she is barred from bringing a later claim in any court based on the same facts. Plaintiff has not raised any state or local law claims that post-date or are different than those covered by the NYSDHR decision. All claims under state or local law are dismissed.

V. **Summary Judgment Standard**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and if the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Mitchell v. Washingtonville Cent. School Dist.*, 190 F.3d 1, 5 (2d Cir. 1999). In ruling on a motion for summary judgment, the evidence must be construed in the light most favorable to the non-moving party and all reasonable inferences drawn in her favor. Fed. R. Civ. P. 56(c); *see Anderson*, 477 U.S. at 247–50, 255; *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009). This is particularly true where the complaint is filed by a *pro se* plaintiff. *See Lerman v. Bd. Of Elections*, 232 F.3d 135, 140 (2d Cir. 2000); *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 346 (S.D.N.Y. 2002). Moreover, "summary judgment should be used sparingly when, as is often the case in sexual harassment claims, state of mind or intent are at issue." *See Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 61 (2d Cir. 1998) (internal quotations omitted).

The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party appears to have met this burden, the opposing party must produce evidence that raises a question of material

fact to defeat the motion. *See* Fed. R. Civ. P. 56(e). This evidence may not consist of "mere conclusory allegations, speculation or conjecture." *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *see also Delaware & Hudson Ry. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) ("Conclusory allegations will not suffice to create a genuine issue.").

## VI. Statute of Limitations

### A. Generally

"No action based on a claim of . . . discrimination [under Title VII] may be brought in federal court unless the claim was properly raised with the EEOC, i.e., within the permissible time limit for filing the claim with the EEOC, . . . and within the scope of the EEOC investigation reasonably expected to grow out of that filing." *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 23-24 (2d Cir. 1985).

The scope of an EEOC complaint in a Title VII action "has generally been construed to be limited not to the words of the charge but to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Smith v. Am. President Lines, Ltd.*, 571 F.2d 102, 108 n.10 (2d Cir. 1978).

In a state with its own fair employment practices agency (such as the NYSDHR), a federal discrimination claim must be filed with the EEOC within 300 days of the alleged incident in order to be timely. 42 U.S.C. § 2000e-5(e)(1); *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (reading statutory time limitations as mandatory); *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134 (2d Cir. 2003) (same); *Payne v. MTA N.Y.C. Transit*, 349 F. Supp. 2d 619, 624 (E.D.N.Y. 2004) (same). A discrete discriminatory act occurs on the day that it actually happened, *Morgan*, 536 U.S. at 110, and accrues for statute of limitation purposes when

the individual knows or should have known of the injury, *see Harris v. City of New York,* 186 F.3d 243, 247 (2d Cir. 1999).

In *Morgan*, the Supreme Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."

> Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180– or 300–day time period after the discrete discriminatory act occurred.

536 U.S. at 113.

Plaintiff did not charge the defendant with sexual harassment until she filed her amended complaint on August 18, 2008. Because plaintiff's amended complaint was filed on August 18, 2008, only those sexually harassing acts that post-date October 20, 2007 are timely. Since the last incident of harassing conduct occurred on October 27, 2006, her claim of harassment would be time barred absent some exception.

Plaintiff does not dispute that the last incident of sexually harassing conduct occurred on October 27, 2006. Instead, she argues that the claim is timely because it relates back to her initial EEOC complaint. Pl.'s Opp. to Def.'s Mot. for Reconsideration 6, Doc. Entry 61, Dec. 20, 2011. In the alternative, she argues that the filing deadline was subject to equitable tolling. *Id.* at 7.

### B. Relation Back

When a plaintiff files an amended EEOC complaint, the timeliness of any new charges depends on whether those allegations "relate back" to the claims in the original complaint. *See* 29 C.F.R. § 1601.12(b). If an amended complaint alleges additional facts or claims, those discriminatory acts that occurred within 300 days of the filing of the amended complaint are timely. If the allegations relate back to the claims in the original complaint, then any acts which

fell within the original, earlier 300 day period are also timely. A claim relates back to the original complaint if it is "related to or growing out of the subject matter of the original charge." *Id.*

In deciding whether new claims relate back, a "flexible approach" is necessary, *Silver v. Mohasco Corp.*, 602 F.2d 1083, 1090 (2d Cir. 1979), *rev'd on other grounds*, 447 U.S. 807 (1980), particularly in light of the fact that the initial EEOC charge is often made without the assistance of counsel, *Adames v. Mitsubishi Bank Ltd.*, 751 F. Supp. 1565, 1572 (E.D.N.Y. 1990). While "the charging party may have precise knowledge of the facts concerning the 'unfair thing' done to him, [he may] not be fully aware of the employer's motivation for perpetrating the 'unfair thing.'" *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970).

To determine whether an additional claim relates back to the initial complaint, courts have looked broadly at whether the facts alleged in the initial complaint would have supported the new claim. In *Drummer v. DCI Contracting Corp.*, for example, the Southern District of New York found that plaintiff's charge of religious discrimination, later added to her initial complaint of pregnancy discrimination, was untimely. 772 F. Supp. 821, 826-27 (S.D.N.Y. 1991).

> The problem here . . . lies not in the legal conclusion [plaintiff] attached to her allegations of fact but in the facts themselves. Each of Defendants' complaints cited in the original EEOC Charge specifically relates to [her] pregnancy. Drummer makes no reference to generalized complaints about time off of work or to complaints that might indicate that there was something more behind them than her pregnancy . . . .

*Id.* A case in the Eastern District of New York similarly found that plaintiff's new claim of age discrimination added in her amended complaint did not relate back to the original complaint of

13

race discrimination, since "the facts given by plaintiff to the EEOC in her race claim were not sufficient to apprise the EEOC that a possible age claim was also lurking in the case." *Dennis v. Pan American World Airways, Inc.*, 746 F. Supp. 288, 291 (E.D.N.Y. 1990). *See also Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 675 (9th Cir. 1988) (holding that an untimely amendment alleging age discrimination did not relate back to the original, timely charge of national origin discrimination where the original charge contained "no hint of age discrimination"); *Hornsby v. Conoco, Inc.*, 777 F.2d 243 (5th Cir. 1985) (holding that an amended complaint that alleged a new claim of sexual harassment did not relate back to plaintiff's original claim of age and sex discrimination, as the amendment added "both a new and independent charge, sexual harassment, and new and independent facts to support this claim"); *Rizzo v. W.G.N. Continental Broadcasting Co.*, 601 F. Supp. 132, 134-35 (N.D. Ill. 1985) (holding that an amended claim alleging sex discrimination did not relate back to an original charge alleging age discrimination; "while [plaintiff] . . . alleged facts sufficient to state a cause of action in age discrimination, nowhere in her [original] charge is there any reference to facts indicating that [her employer] sexually discriminated against her").

By contrast, in *Adames*, plaintiffs alleged that their employer, a Japanese bank, discriminated against non-Asian employees. 751 F. Supp. at 1568. While the original EEOC charge claimed national origin discrimination, plaintiffs subsequently added a claim for race discrimination. Because a race discrimination claim could reasonably be expected to grow out of an EEOC investigation of national origin discrimination, the court found that "[plaintiffs'] amended complaint properly 'amplified' her original complaint." *Id.* at 1572; *see also Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 464 (5th Cir. 1970) (finding that an untimely charge of national origin discrimination related back to the original charge of sex discrimination, as the

14

facts on which both claims were based were identical and "a charging party's failure to attach the correct legal conclusion to the factual allegations contained in a charge of discrimination is a mere technical defect which may be amended after the expiration of the ninety-day period"); *Gibbs v. American School for the Deaf*, No. 05-CV-563, 2006 WL 141647, at *2 (D. Conn. Jan. 19, 2006) (holding that an ADA claim raised for the first time in plaintiff's amended complaint related back to the original complaint, as it "concerns the same events and conduct asserted in his original complaint").

Plaintiff's claim of sexual harassment, added in August 2008, does not relate back to her original October 2006 complaint. Her initial NYSDHR complaint only alleged sex and disability discrimination. In some cases, the facts underlying a claim of sex discrimination may also give rise to a claim of sexual harassment. Here, the facts in the original complaint, which alleged four incidents in which plaintiff was denied work or pay, did not support an inference of sexual harassment. Moreover, the amended complaint did more than apply a different legal gloss to the same facts; it also added twelve pages of new factual allegations. *See* NYSDHR Am. Compl. These new allegations constituted a new and distinct charge.

### C. Equitable Tolling

The filing deadline for an EEOC complaint is not jurisdictional and, like a statute of limitations, is subject to equitable tolling. *See, e.g., Bruce v. United States Dep't of Justice*, 314 F.3d 71, 74 (2d Cir. 2002). "Equitable tolling is only appropriate in rare and exceptional circumstances . . . in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (internal citations, quotation marks, and alteration omitted).

> Equitable tolling is generally considered appropriate "where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period," *Brown v. Parkchester S. Condos.*, 287 F.3d 58, 60 (2d Cir. 2002) (internal quotation marks omitted); where plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant, *see Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985); or where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion, *see, e.g., Brown*, 287 F.3d at 60; *Canales v. Sullivan*, 936 F.2d 755, 758 (2d Cir. 1991). When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has "acted with reasonable diligence during the time period she seeks to have tolled," and (2) has proved that the circumstances are so extraordinary that the doctrine should apply. *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002).

*Id.* at 80-81. A plaintiff seeking to benefit from equitable tolling bears the burden of proving that application of this equity doctrine is appropriate. *See Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002).

In the present case, there is no allegation that plaintiff was misled by the defendant or was prevented from filing a complaint due to a mental or medical condition. Rather, plaintiff claims that "she was prevented by the [NYSDHR] from filing the [sexual harassment] charge . . . through no fault of her own" because of the agency's understaffing. Pl.'s Opp. to Def.'s Mot. for Reconsideration 7, Doc. Entry 61, Dec. 20, 2011.

Equitable tolling may be justified when a reasonable inference may be drawn that the EEOC or similar agency was responsible for the untimely filing of a Title VII charge. *See Carlyle Towers Condominium Ass'n, Inc. v. FDIC*, 170 F.3d 301, 310 (2d Cir. 1999) (recognizing that plaintiff's late filing might be excused if based on inaccurate advice from government official); *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984) (observing that plaintiff's reliance on erroneous filing advice from EEOC official "has been recognized as justification for equitable tolling"); *see also Fils-Aime v. Chase Manhattan*

*Bank*, No. 99-9435, 1 Fed. Appx. 24, 26 (2d Cir. Jan. 4, 2001) (stating that an allegation that the "NYSDHR misled [the plaintiff] into believing that her complaint would be forwarded to the EEOC" could permit equitable tolling);

The record demonstrates that plaintiff was not prevented from filing her sexual harassment charge due to understaffing at the NYSDHR or bad advice by the agency. Rather, she had ample opportunity, information, and skill to file a timely complaint. No jury could find credible her contention that she tried to file a claim of sexual harassment before the statute barred the claim. The court finds that she did not try to file a claim before the statute of limitations barred her new claim.

Plaintiff dually filed a complaint with the NYSDHR and the EEOC in October 2006. This complaint neither explicitly claimed sexual harassment nor pled any facts indicating she was subject to such harassment. It did not mention the incident in which she was taken out of service for wearing a jacket over her uniform, even though she described that incident in her complaint to the NYCTA's internal EEO.

Plaintiff testified that, when she filed her initial NYSDHR complaint in Manhattan, she was told that she could only file a sexual harassment claim in Brooklyn. Tr. of Hr'g on Mot. for Reconsideration, Dec. 28, 2011. She states that when she tried to file her sexual harassment claim with the Brooklyn NYSDHR, she was told that there were only two investigators on staff and that she would have to "wait to be contacted in order to complete a full intake report with an investigator assigned to [her] case." Bowen Decl. ¶ 4. According to plaintiff, months elapsed before she was finally contacted by the investigator on her case, despite her repeated attempts to file a sexual harassment complaint. *Id.* at ¶ 5.

Plaintiff's contention that she tried to, but was prevented from making a timely filing is not credible; no jury or judge could find it credible. Her testimony is contradicted by the NYSDHR event history and the full NYSDHR file, which thoroughly document her contacts with the agency. It is clear from these documents that the NYSDHR accurately recorded its contacts with the plaintiff as part of its normal investigation procedures, not because of a special request by the plaintiff.

The NYSDHR event history and file do not reflect that the agency frustrated her efforts to file a sexual harassment claim, as testified to by the plaintiff. It shows that she had several opportunities to raise that claim with the NYSDHR, beginning as early as December 2006. Yet that claim was not mentioned until August 14, 2008. Her testimony on the issue is not credible; it constitutes an afterthought in an attempt to excuse her neglect rather than the facts.

Equitable tolling is not justified.

## VII. Conclusion

Defendant's motion for summary judgment is granted with respect to plaintiff's hostile work environment claim. Plaintiff has stipulated to withdraw all remaining federal claims. Jurisdiction over any state or local claims is absent.

The case is dismissed. No costs or disbursements.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: December 29, 2011
Brooklyn, New York